NOT FOR PUBLICATION                                    (Document No. 3)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                        :
LOUIS GROSSMAN,                         :
                                        :   Civil No. 12-3097 (RBK/KMW)
                  Plaintiff,            :
                                        :
       v.                               :   **OPINION**
                                        :
                                        :
PARKING AUTHORITY OF THE                :
CITY OF CAMDEN, et al.,                 :
                                        :
                  Defendants.           :
_____ :

**KUGLER**, United States District Judge:

      This matter arises out of Plaintiff Louis Grossman's ("Plaintiff") claims against the Parking Authority of the City of Camden ("Authority") and the individual commissioners comprising the Authority (collectively, "Defendants") for breach of contract, breach of the implied covenant of good faith and fair dealing, and discrimination on the basis of disability and race in violation of federal and state law. Currently before the Court is Defendants' motion to dismiss certain counts of Plaintiff's Complaint for failure to state a claim upon which relief can be granted (Doc. No. 3). For the reasons stated herein, the Court will grant in part and deny in part Defendants' motion. It will deny the motion to dismiss Counts One and Two for breach of contract and breach of the implied covenant of good faith and fair dealing. It will grant the motion to dismiss Count Five for aider and abettor liability under the New Jersey Law Against Discrimination.

I.	**FACTS AND PROCEDURAL BACKGROUND**[1]

In August 2008, the parties entered into a contract of employment whereby the Defendant Authority agreed to employ Plaintiff as its Director of Operations through August 19, 2011 ("2011 Agreement"). Compl. ¶¶ 11, 13. As that term of employment was nearing its completion, Plaintiff, in July 2011, met with Defendant Angel Alamo, Chairman of the Defendant Authority's Board of Commissioners and Plaintiff's direct supervisor. *Id.* ¶ 14. Defendant Alamo represented to Plaintiff that the Authority had agreed to renew his term of employment at a higher salary for another three years (through August 2014), to begin upon the expiration of his then-current contract ("2014 Agreement"). *Id.* ¶¶ 15, 16. The Authority's Board of Commissioners later voted on and authorized this new employment agreement under the terms Defendant Alamo described to Plaintiff. *Id.* ¶ 20. In October 2011, however, Plaintiff was informed that his employment with the Authority had been terminated effective immediately. *Id.* ¶ 37.

Around the same time of his meeting with Defendant Alamo, Plaintiff was diagnosed with diabetic neuropathy, a condition causing him vision problems as well as severe pain in his extremities. *Id.* ¶ 21. He received short term disability benefits and continued to perform his job functions from home, although not on a full-time basis. *Id.* ¶¶ 30, 36. He received a salary through September 25, 2011. Upon terminating Plaintiff's employment, the Authority hired a new Director of Operations who had previously worked as a shuttle bus driver for the authority. *Id.* ¶ 43. The new Director is African-American, while Plaintiff is white. *Id.* ¶ 44.

On April 16, 2012, Plaintiff filed suit in New Jersey state court. His Complaint asserts claims against the Authority for breach of contract (Count One), breach of the implied covenant

---

[1] When considering the sufficiency of the factual allegations in a plaintiff's complaint, the Court, for purposes of deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), assumes such allegations to be true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

of good faith and fair dealing (Count Two), and for discrimination on the basis of race and disability in violation of the federal Americans with Disability Act, 42 U.S.C. § 12101 *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.* (Counts Three and Four). The Complaint also claims that the Authority's individual commissioners aided and abetted in the alleged discrimination against Plaintiff and are therefore liable NJLAD. (Count Five). Defendants removed the action to this Court on May 24, 2012.[2] (Doc. No. 1). Shortly thereafter, they filed the instant motion to dismiss Counts One, Two, and Five of the Complaint. (Doc. No. 3).

## II.     DISCUSSION & ANALYSIS

### A.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second,

---

[2] The Court exercises federal question jurisdiction under 28 U.S.C. § 1331 over Count Three of the Complaint because it seeks relief under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (2006). The Court exercises supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(a).

3

the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is possible rather than plausible. *Id.*

**B.     Breach of Contract (Count One)**

Count One of Plaintiff's Complaint alleges that he and the Defendant Authority entered into an oral employment contract to run from August 20, 2011 through August 19, 2014, and that the Authority breached its obligations under this 2014 Agreement when it terminated Plaintiff's employment on October 6, 2011. Pl.'s Opp. Br. 11. Defendants present two arguments in support of their motion to dismiss this claim, each of which the Court will consider in turn.

*i. Whether the Authority actually agreed to be bound by the 2014 Agreement*

Defendants' first argument is that the parties never entered into a valid contract because Defendant Commissioner Alamo, who initially informed Plaintiff of the terms of the 2014 Agreement, had no unilateral power to bind the Authority to any contractual obligations. Instead, Defendants continue, the Authority could be so bound only if a majority of the commissioners voted to enter into a contract with Plaintiff. Defs.' Br. in Support of Mot. to Dismiss 7-8 (citing N.J.S.A. §§ 40:11A-4, 40:11A-6 for the Authority's statutorily-defined procedures for entering into contractual relationships with private parties). Recasting this argument in the language of contract formation, the Court understands Defendants to assert that

4

there was no valid offer made to Plaintiff because Defendant Commissioner Alamo was not empowered to make such offers on behalf of the Authority.  *See Big M, Inc. v. Dryden Advisory Group*, No. 08-3567, 2009 WL 1905106 at *18 (D.N.J. June 30, 2009) (citing N.J. Jury Instr. Civ. 4.10 C) (describing the four elements of a legally enforceable contract under New Jersey as 1) a meeting of the minds; 2) offer and acceptance; 3) valid consideration; and 4) reasonably certain contract terms).

For purposes of this motion, the Court will assume without deciding that Defendant Alamo had no power to bind the Authority to contractual obligations and that such obligations could arise only if the Authority's Board of Commissioners actually voted to enter into them. Unfortunately for Defendants, this is exactly what the Complaint alleges.  Paragraph 20 of the Complaint states that "[t]he Board of Commissioners voted on and authorized the extension of [Plaintiff's] contract as set forth [in the conversation between Plaintiff and Defendant Commissioner Alamo]."  Nowhere in their briefing papers do Defendants mention paragraph 20 or its bearing on their argument.  Consequently, the Court, obliged to accept as true the well-pleaded factual allegations in Plaintiff's Complaint for purposes of deciding a motion to dismiss under Rule 12(b)(6), concludes that Plaintiff has sufficiently alleged a valid offer and acceptance with respect to the 2014 Agreement between him and the Authority.  Thus, it cannot grant Defendant's motion to dismiss Count One of the Complaint on this basis.

*ii. Whether the 2014 Agreement is subject to the 2011 Agreement's Modification Provisions*

Defendants' second argument is that the parties could not execute an oral employment contract because the 2011 Agreement, which governed Plaintiff's employment at the time he spoke with Defendant Alamo in July 2011, specified that it could "not be modified or altered

except by formal written agreement executed by both parties . . . ." *Id.* 8-9; *see* Compl., Exh. B ¶ 11. Characterizing the 2014 Agreement as a "renewal" of the 2011 Agreement, and then equating the term "renewal" to either "modifi[cation]" or "alter[ation]," Defendants assert that the 2014 Agreement was subject to the terms of the 2011 Agreement. Therefore, Defendants conclude, the renewed agreement is invalid because it was executed orally rather than in writing.

The Court agrees that, by its own terms, the 2011 Agreement could not be modified or altered except through a formal writing executed by both parties. The Court therefore agrees that the 2014 Agreement, taking oral form, did not modify the 2011 Agreement. However, such a conclusion does not foreclose the possibility that the 2014 Agreement was simply a *new* employment contract entered into by the parties, assuming Plaintiff properly alleges that the parties' conduct evidences the four elements of a legally enforceable contract under New Jersey law.

As discussed above, the four elements of contract formation in this state are: 1) a meeting of the minds; 2) offer and acceptance; 3) valid consideration; and 4) reasonably certain contract terms. *Big M, Inc.*, 2009 WL 1905106 at *18. The Court finds that Plaintiff's Complaint properly alleges these elements. First, the conversation between Plaintiff and Defendant Alamo in which Defendant Alamo represented that the Authority had agreed to renew Plaintiff's employment agreement, Compl. ¶ 15, combined with the Authority's vote to formally enter into the 2014 Agreement, *id.* ¶ 20, and Plaintiff's acquiescence to this agreement, *see id.* ¶ 17, demonstrates an intent by both parties to be bound by that contract, indicating thereby a meeting of the minds. Similar, Plaintiff's agreement "to another three year term of employment with the Authority," *id.* ¶ 17, constitutes an offer, while the Authority's "vot[ing] on and authorize[ing] the extension of Plaintiff's contract," *id.* ¶ 20, operates as an acceptance. Third, the employment

6

agreement places affirmative obligations on both parties, thus demonstrating that there was valid consideration by both parties.  *See id.* ¶¶ 15-16 (describing the Authority's promise to pay Plaintiff a yearly salary and Plaintiff's promise to perform the duties of the Authority's Director of Operations).  Finally, the 2014 Agreement, while taking oral form, nevertheless included reasonably certain terms: it was to last until August 19, 2014, *See id.* ¶ 15; it provided for an increased salary, *id.* ¶ 16; it adopted most if not all of the other terms of the parties' previous employment contract, *see id.* ¶ 20 (characterizing the 2014 Agreement as an "extension" of the 2011 Agreement).  Thus, Plaintiff has alleged that he entered into a valid oral contract with the Authority, even if the 2014 Agreement did not constitute a modification or alteration of the parties' 2011 Agreement.  Consequently, the Court will deny Defendants' motion to dismiss Count One of Plaintiff's Complaint.

C.	**Breach of Covenant of Good Faith and Fair Dealing (Count Two)**

Count Two of Plaintiff's Complaint alleges that Defendants' conduct breached their covenant of good faith and fair dealing.  Of course, in order to assert such a claim, Plaintiff must establish that he and Defendants entered into a valid contractual relationship in the first place. *See Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001).  Defendants' argument in support of their motion to dismiss Count Two was based entirely on the contention that the parties' 2014 Agreement was invalid as a matter of law.  Because the Court has found that Plaintiff has alleged the existence of a valid contract, however, Defendant's argument necessarily fails.  Thus, the Court will deny Defendant's motion to dismiss Count Two.

D.	**Aider and Abetting Liability (Count Five)**

In addition to his discrimination claims against the Authority itself (Counts Three and Four of the Complaint), Plaintiff alleges liability on the part of the Authority's individual

Commissioners. Indeed, an individual may be personally liable under the New Jersey Law Against Discrimination ("NJLAD") if he or she "aid[s] [or] abet[s] . . . in the doing of any of the acts forbidden under [the NJLAD]." N.J.S.A. § 10:5-12(e). To state a claim for so-called "aider and abettor" liability against a defendant, a plaintiff must allege facts demonstrating, among other things, that the defendant was "generally aware of his role as part of an overall illegal or tortious activity at the time he provide[d] the assistance; [and] . . . [that] the defendant . . . knowingly and substantially assist[ed] the principal violation." *Tarr v. Ciasuilli*, 853 A.2d 921, 929 (N.J. 2004) (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 129 (3d Cir. 1999)). Accordingly, a viable aider and abettor claim requires allegations of how an individual's specific conduct "substantially assist[ed]" another party's discriminatory acts.

Plaintiff's Complaint is completely devoid of any such allegations. The only mention of specific conduct by any of the Commissioners is with respect to Defendant Alamo. Compl. ¶¶ 14-18. However, these allegations relate solely to Plaintiff's breach of contract claims, rather than his LAD claims. In addition Plaintiff alleges the following:

> 90. The Commissioners aided, abetted, incited, compelled or coerced . . . when they willfully and knowingly gave substantial assistance or encouragement to the unlawful conduct of the Authority to discriminate against [Plaintiff] on the basis of disability and race.
>
> 91. The Commissioners are liable as aiders or abettors because they intended to facilitate discrimination, shared discriminatory purpose with the Authority, assisted, encouraged, and engaged in affirmative acts of discrimination within the scope of their employment.
>
> 92. [Plaintiff] believes and therefore avers that individually, and in their official capacities, the Commissioners were actively and purposefully involved in the discriminatory conduct set forth in this Complaint.

These three paragraphs, lacking any specific factual underpinnings, are the sort of wholly conclusory allegations that the Court may disregard in determining whether Plaintiff has stated a plausible claim for relief. *See Iqbal*, 556 U.S. at 680. Thus, the Court finds that Plaintiff has failed to allege facts sufficient to state an aider and abettor liability claim under the NJLAD against any of the individual Commissioner Defendants. Thus, Defendants' motion to dismiss Count Five of the Complaint will be granted.

### III. CONCLUSION

For the reasons stated above the Court will grant in part and deny in part Defendants' motion to dismiss certain counts of Plaintiff's Complaint. It will deny the motion to dismiss Counts One and Two for breach of contract and breach of the implied covenant of good faith and fair dealing. It will grant the motion to dismiss Count Five for aider and abettor liability under the New Jersey Law Against Discrimination. The Court will issue an appropriate order.

Dated: 3/18/2013 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge